**Dissenting Opinion Filed August 31, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00536-CV**

**IN RE PIONEER NATURAL RESOURCES USA, INC., Relator**

**Original Proceeding from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-05255**

## DISSENTING OPINION

Before Justices Schenck, Partida-Kipness, and Nowell
Dissenting Opinion by Justice Partida-Kipness

Based on the record before us, I would deny the petition for writ of mandamus in its entirety. Because the majority does not, I dissent.

Mandamus "is intended to be an extraordinary remedy, available only in limited circumstances. The writ will issue 'only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies.'" *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding) (quoting *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex. 1989)). This case does not present such a circumstance. Accordingly, I conclude relator has not met its heavy burden to show the trial court clearly abused its discretion here.

# EMPLOYMENT RECORDS

In Requests for Production 21, 22, and 23, Intervenor Gilbert Lara sought the redacted hiring, training, disciplinary, and employment files of the employees and two supervisors who were present at the incident site on the day of the fatal explosion that killed his son, Anthony. My colleagues conclude those documents are per se undiscoverable. I disagree. The mandamus record shows that Noel Olivas and Anthony Lara died while working at a site owned, controlled, and operated by relator. Noel and Anthony were killed after oil spewed out of Heater Treater #7, the equipment they were repairing, and landed on Heater Treater #8, which ignited a fire and explosion. It is undisputed that one of relator's employees, Jesse Nevarez, ordered repairs for Heater Treater #7 the morning of the explosion, took various steps to prepare the equipment for repair by the repair crew, and left the jobsite approximately ten minutes before the explosion. The mandamus record does not show, however, how many of relator's employees were at the incident site the day of the incident, though relator contends supervisors Michael Lively and Preston Bridges arrived after the explosion.

In seeking hiring, training, disciplinary, and employment files of relator's employees who were on the job site that day, Intervenor was not on a fishing expedition. On the contrary, Intervenor sought information regarding what training, if any, the employees present that day had on heater/treater lockout/tagout procedures, and whether they had been disciplined for workplace safety violations

in order to determine what role relator's training of its employees and worksite safety protocols played in this incident. Such information is reasonably calculated to lead to the discovery of admissible evidence regarding Intervenor's negligence, premise liability, and gross negligence claims against relator. My colleagues conclude that this information is irrelevant and exceeds the bounds of discovery because the employees were not at the job site at the time of the accident, and the record does not show that Lively and Bridges were the supervisors of Nevarez or any of the employees "who may have been responsible for the accident . . . ." (Slip Op. at 6). I respectfully disagree.

Information is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the information. TEX. R. EVID. 401. The phrase "relevant to the subject matter" is to be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial." *In re HEB Grocery Co., L.P.*, 375 S.W.3d 497, 500 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) (quoting *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009)). How and if on-site employees were trained on the equipment and procedures involved in the explosion and if they have been disciplined for workplace safety violations will, at a minimum, provide Intervenor with relevant information from which to determine whether employee training, discipline, hiring, or supervision played a role in causing this tragic accident. Such information is certainly relevant to the subject matter of the

action, even if it may not ultimately be admissible at trial. *See, e.g.*, *In re HEB Grocery Co., L.P.*, 375 S.W.3d at 506 (no abuse of discretion to compel production of floor safety training records of managers, maintenance partners, and partners who were working in the area where the plaintiff fell "nothwithstanding the volume of employees present on the date of the event" where H.E.B. conceded store safety procedures require those employees to monitor store for safety hazards).

I also disagree with the majority's determination that these discovery requests "could have easily been more narrowly tailored to include only employees who had some conceivable role in the injury-causing events." (Slip Op. at 7). This conclusion seems to envision a discovery request in which Intervenor asks relator / defendant to produce the employment records of the employees present the day of the incident who relator believes had a role in the injury-causing events. In other words, Intervenor must rely on the defendant he has sued to willingly produce the employment records of employees the defendant believes may be liable to Intervenor. That turns the discovery process on its head. One purpose of the requests for production at issue here is to gather information so Intervenor can determine which employees present that day, if any, played a role in the injury-causing events and, more importantly, to determine how and if relator's policies, practices, and procedures contributed to causing this incident. *See, e.g., In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 154 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding) ("Because Williams was a manager with responsibility for formulating and

–4–

implementing Sun Coast's safety rules, the trial court reasonably could have found that the listed items from his personnel file are reasonably calculated to lead to the discovery of admissible evidence."). By granting mandamus relief, my colleagues unnecessarily deprive Intervenor of relevant and reasonably tailored discovery.

## TRAINING RECORDS

I also disagree with my colleagues regarding the discoverability of Nevarez's training records. Nevarez, relator's employee, is at the center of Plaintiffs' and Intervenor's claims because he ordered repairs for Heater Treater #7 the morning of the explosion, took various steps to prepare the equipment for repair by the repair crew, handed the job over to the repair crew, and left the jobsite approximately ten minutes before the explosion. In his affidavit, Nevarez provided his version of events from the day of the explosion. This included a detailed account of the various steps he took and procedures he followed to prepare Heater Treater #7 for Noel, Anthony, and their crew to conduct their repairs. He also explained which steps in that process he was generally responsible for and which steps he left to the responsibility of the repair crew. Interrogatories 1 and 8 and Request for Production 1 asked relator to (1) identify the training relator provided to Nevarez encompassing the procedures Nevarez listed in paragraphs 4, 5, 6, 10, 11, 12, 14, 15, and 17 of his affidavit, (2) produce a copy of the training so identified, and (3) identify the trainers who provided that training.

Relator contends those requests are overbroad and patently irrelevant because Nevarez has worked for relator for many years and engaged in formal and informal training, some of which took place in the field and was undocumented. The majority agreed, concluding that the requests place an undue burden on relator because the requests "by their very nature would require investigation into every communication any person, whether an employee or not, had with Nevarez about his job." I respectfully disagree with my colleagues.

Nevarez's training records are not only relevant but central to the parties' claims and defenses here. Intervenor narrowed the discovery requests to training information related to the tasks Nevarez states he undertook the day of the explosion. Relator does not contend this information is irrelevant and even told the trial court relator is "happy to provide the trainings that he has in his file." Yet, when the trial judge signed the discovery order, the case had been on file for more than a year, and relator had not yet produced Nevarez's employment file, let alone "the trainings that he has in his file." Although I can understand counsel's frustration at being told to "do the best you can" when one's client insists discovery will be burdensome, the trial court's point seems well taken in this case. These requests are reasonably tailored that seek highly relevant information that relator should respond to so the case can move forward. I conclude relator has not met its high burden to show an abuse of discretion here and would deny the petition for writ of mandamus.

## CONCLUSION

This is not a case in which a trial court has ordered a party to produce trade secrets or decades-worth of documents concerning irrelevant people or issues. Intervenor's discovery requests seek relevant information, are reasonably tailored as to time, place, and subject matter, and are reasonably calculated to lead to the discovery of admissible evidence. We should rarely grant mandamus relief and should do so only in those limited circumstances in which a relator has established a clear abuse of discretion by the trial court. I do not agree with my colleagues that mandamus relief is warranted here.

Accordingly, I respectfully dissent.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

200536DF.P05